Hear ye, hear ye, hear ye. The United States Court of Appeals for the Doe Circuit is now open according to law. God save the United States and the Son of the Lord. May it please the Court. Counsel. Your Honor, I'm Andrea Mooney. I'm the attorney for Appellate April Jewell. You're here today on the appeal of Mrs. Jewell to first address her qualified immunity. And so speaking about the first claim, which is a supervisory liability claim, we know that from this Court's precedence that the test that is applied is the Doe v. Taylor case. And so we have to look at the factors in Doe v. Taylor and how that was applied here. So turning first to the first prong, which is whether Mrs. Jewell learned of facts of sexual abuse that would plainly point to, or sexual behavior, excuse me, on behalf of Mr. Crenshaw, that would plainly point to sexual abuse. And I ask this Court, it's a pretty dense pleading, I ask you to really look through the facts in this case and sort through what is specifically pleaded as to what Mrs. Jewell knew. Not what others knew or not what we came to find out later, but what Mrs. Jewell knew at the relevant point in time. And I suggest to this Court that there will not be anything pleaded against Mrs. Jewell in that she knew or had knowledge of sexual behavior on the part of Mr. Crenshaw that plainly pointed to sexual abuse. There's nothing in the pleadings that suggests that, as to Mrs. Jewell. So you're saying that an adult teacher lying under a blanket with a minor student is not suggestive of sexual behavior? Thank you, Your Honor. If you actually look at the complaint, there is no allegation that Mrs. Jewell knew of lying under blankets. Mrs. Jewell knew of lying under blankets, of lying with a student. That's not alleged as to Mrs. Jewell. And I'm going to go through, if the Court will allow the three. She was told there were photographs of the teacher lying under blankets with the student. Is that not correct? That's not correct, Your Honor, with all due respect. What's alleged is that in February of 2021, that Mrs. Jewell attended a meeting with Mrs. Sams, who was the aide in the classroom, who was in there every day with Mr. Crenshaw, and with Ms. Garrick. They had had a meeting previously, the vice principal, with Ms. Garrick and Ms. Sams. And the two of them had discussed Ms. Sams' concerns that Crenshaw was lying with the student. And so they brought it to Mrs. Jewell. We don't know what was discussed. We don't know what photos were described, or even that they were sexual in nature. But there's no allegation in the complaint that Mrs. Jewell was told that there were photographs? There's no allegation that she knew that there were photographs, or that she said, because of the photographs, I'm going to have to speak to Rusty. But specifically of photographs of the teacher lying under the blanket with the student. Correct. And that's the plaintiff's pleading. The plaintiff's duty to plead, which this has been on file since August of 2023, so that's the plaintiff's duty to plead those facts. But what was specifically described to Mrs. Jewell is not contained in the pleadings. Importantly, and this is not in any way to pass the buck or to show liability for other individuals, this is for knowledge, purely for the point of knowledge. No one who explained or described or reported any conduct to Mrs. Jewell thought it was sexual either. Plaintiff has been clear on that point. Mrs. Sams didn't think it was sexual in nature, and she was in there every single day. And plaintiffs have been quick to defend these informers in saying, no, they didn't have any knowledge that this was sexual in nature. All of these individuals are mandatory reporters. Not one individual ever reported sexual abuse of Mr. Crenshaw. So if the informers who were in Mr. Crenshaw's classroom every single day, who perceived the behavior with their own eyes for five and six months, didn't believe it was sexual, then how would the person being informed have any superior knowledge that it was sexual? So what was described in February of 2021, we said, was that there were photos. We don't know what the photos depicted, and that whatever that conversation contained, which isn't pleaded, and we have to follow what was pleaded, Mrs. Jewell said, I'm going to have to talk to Rusty, the Title IX coordinator, which also shows that Mrs. Jewell was not deliberately indifferent, which we'll get to in a moment. Just to clarify this pleading point, page 9, I'm looking at the R&R, page 9 of the R&R says, when shown photos of Crenshaw lying under a blanket with Jane at nap time, Jewell stated, et cetera, et cetera. Page 9. Which paragraph? Are you referring to your own or I'm saying? Top line of page 9. Okay. When shown photos of Crenshaw lying under a blanket with Jane at nap time, Jewell said, stated. And that's in the complaint? Or that's in the, are you talking about? It's in the R&R. Okay. Because if it's the appellate's brief, that's not pleaded, as far as I know, in the complaint. There are things that have been added since the briefs have been filed. Like Mrs. Jewell knew about routine laying down under blankets. That's not in the complaint. And that wasn't pleaded. We've added things since. So is your point that the magistrate got it wrong? Yeah. You're allowed to make that point, but that's your point. Many things in the magistrate's recommendation were characterized as sexual abuse. That even the, you know, set knowledge of sexual behavior. That even the plaintiffs did not characterize that way. They said misconduct. They said, you know, things of that nature. But no allegation in the complaint of Mrs. Jewell knowing of routine or any laying under blankets or napping with students. So that was the first incident, was February 2021. The second. What about repeated reports of sitting on the teacher's lap? Was she made aware of that? So that was the second incident of her allegedly having information. So these are four-year-old students. And Ms. Willis, this was in March of 2021. This is the second incident. Mrs. Willis said Mr. Crenshaw is allowing the student to sit on his lap and hold his hand. And he's allowing her to wear his sweatshirt. Now, I would suggest to this court that these things go on in every preschool in this country. Sitting on a teacher's lap. This is a four-year-old. Now, if it was a 16-year-old, we'd be having a different conversation. But what adult in this courtroom hasn't placed a student on their lap or a child on their lap? That's four. Or held their hand. Or given them their sweatshirt if they're cold. Or they got a mess on their shirt. None of that is sexual behavior. None of that would plainly point to sexual abuse in any way. And then the third incident, when it was suggested that Ms. Jewell had information, was in April of 2021. Now, this was a large group of individuals meeting. There were teachers. There were administrators. A large group of, I think, eight individuals meeting. Can we go back to this, your point about the complaint? Because I'm looking at page six and seven, and I confess I don't understand your argument. Page six and seven of the complaint. I'm not seeing why this is inadequate. Because it speaks about Mrs. Sam talking to Mrs. Garrick and stating she saw inappropriate conduct. And then the next page is when Mrs. Jewell even enters the scene, which is on page seven, paragraph 35. We don't know what that conversation entailed. Do you agree that Jewell knows that Ms. Sams has photographs of this lying under the blanket? I don't agree with that, your Honor. What's paragraph 36 say? It says on page seven. What does paragraph 36 say? That is Ms. Garrick, the assistant principal. That's what that conversation was. The conversation was. Paragraph 36 does not mention Garrick. It mentions only Jewell. Right. And it just says photographs of Crenshaw, undefined photographs of Crenshaw. Isn't it obviously referenced to the previous page? It's not obvious, your Honor. And the reason why it's not obvious is because none of the individuals who were there thought it was sexual abuse. Plaintiff has continually argued that point, that for some reason the informants didn't recognize it as sexual abuse, but that Mrs. Jewell should have, based on what was described to her. So your argument is that the word photographs in page 36, I'm sorry, paragraph 36, is not an obvious reference to the photographs on the previous page. That's a heroic interpretation. My argument, your Honor, is that plaintiffs specifically plead that Mrs. Jewell did not see the photographs. That's all that's pleaded. Well, it pleads that she was willfully blind. Paragraph 37, Principal Jewell doesn't want to see the photographs. Paragraph 36, challenging Ms. Sams as to why she took the photographs in the first place. And, your Honor, the reason she took the photographs... She's aware of the photographs. She's aware of photographs. Okay. There's no allegation of what photographs, what they depict. Right. So that goes back to my question. Yeah. That's not a reference to the previous page. The previous page refers specifically to photographs. Right. And I'm saying... We can't interpret paragraph 36 in light of paragraphs 31, 32, and 33? That's too much? No. My argument is that there's no allegation of what was described to Mrs. Jewell. And so we don't know what was described to Mrs. Jewell. It's not pleaded. If plaintiffs wanted to plead that, they could have any time since August 2023. But you're saying she was aware of photographs of some nature depicting something.  But she didn't have any curiosity about the photographs? Well, let me take a look. What are they? Well, of course, we're confined to the pleadings of what plaintiff says occurred in this situation. But all that we know based on what they pleaded, which is the stage we're at, is that Mrs. Jewell did not see the photos, and Mrs. Jewell said, I'm going to have to talk to Rusty, the Title IX coordinator, and there's no information that that didn't happen. There's no information that that never occurred. So Rusty, the Title IX coordinator, needed to talk to Rusty. What about action in the form of meeting with the student, meeting with parents, meeting with the teacher, meeting with anybody else beyond Rusty? And again, Your Honor, I will continue to stress that there is no sexual behavior that was alleged. So whether those things happened as good administrative practices or addressing boundaries or addressing how we interact with our students is an entirely different matter than whether Section 1983 is that Mrs. Jewell is engaged in a constitutional violation. And we are confined to what plaintiffs have pleaded. So this is what they allege was the version of events. But even based on their version of events, knowledge hasn't been shown. And if I may just continue to the third was April 2021. A big group of individuals, administrators, teachers, are speaking in April 2021, and Ms. Willis says Mr. Crenshaw is locking his classroom door. If you've been in a classroom in the state of Texas in the last five years, I'd say, all classroom doors are locked, maybe the last ten years. All classroom doors are locked. And this court can take judicial notice of the reasons cited for that in my brief. But it all goes back to averting school shooters. That students, not Jane Doe, students, in the plural, were crying. And again, these are four-year-old students, were crying. And that Mr. Crenshaw was alone with his four-year-old students. And I would suggest to this court every teacher is alone with their students. It's not specific to Mrs. Doe. So certainly no indication of sexual abuse there. So I believe the question to ask of plaintiffs is where they have specifically pleaded the high standard that Mrs. Jewell had notice of sexual behavior. And I would suggest to this court that it's not included in here. And then we move to the second problem, which is deliberate indifference. And there's no deliberate indifference shown. Because Mrs. Jewell said, I'm going to have to talk to Rusty. So plaintiffs can't have it both ways. If she said, I'm going to talk to Rusty, then that's not deliberate indifference. He's the Title IX coordinator. She asked Ms. Willis, do you have photos of what you're talking about? Do you have anything more than just he's holding four-year-old's hands? And she talked to everyone who brought concerns to her. That's not being deliberately indifferent. And it couldn't have been reasonably established or clearly established to Mrs. Jewell at the time because we haven't even hit the knowledge problem. But you do agree that our precedent does not require that state officials be warned of a specific danger or that they have to anticipate the specific harm or the specific form that the harm would take. So you say, well, there was nothing indicative of sexual behavior, sexual misconduct. But our precedent, Stukenberg and others, have never said the state has to anticipate the exact form that a harm would take. That's correct, Your Honor. There's also precedent that says affinity, a special relationship, a closeness. That's the Alvin case, the Becara case, even red flags. And I will note that Taylor says sexual behavior plainly pointing to sexual abuse is the standard of the court. So whether it takes a particular form would be fact-based. But just this teacher and this student appear to be close, that is not enough. Certainly holding hands with a 4-year-old, which every pre-K teacher does, is not enough. And so moving to the arbitrary and conscience-shocking, we haven't even, again, pleaded that Mrs. Jewell had knowledge. And so it's a tremendously high standard, defies the notions of basic human decency. Now what Mr. – How do you interpret the statement that's been attributed to Jewell, we can't be picky, who we have is what we have to work with? Thank you, Your Honor. I think you have to look at the immediately following paragraph, which is it is alleged that Mr. Crenshaw was alone in the classroom with his students, that he was locking his classroom door and students were crying. So that is the reasonable inference, is that Mrs. Jewell was referring to that, not to we can't be picky about employing sex offenders. That's not a reasonable inference, just based on the sequence of what plaintiff has pleaded. Okay, Ms. Mooney, thank you very much. We'll see you back on rebuttal. Thank you. Ms. Beck, good afternoon. Welcome. Good afternoon, Your Honors. May it please the Court. I'm Monica Beck. I'm going to lower this microphone a little bit here so you can hear me. I'm Monica Beck. I represent the plaintiffs in this case. Jane Doe, who is a minor child, and her parents, Mary and John Doe, who are here today in the courtroom. I'm also here with my co-counsel, Jeff Green. The defense counsel spent a lot of time talking about the complaint, and I want to direct the Court's attention to it's a record of appeal at page 27, paragraph 135, and there the plaintiff does plead that the school district had actual notice of Crenshaw's sexual harassment against Jane Doe no later than January 2021 or February 4, 2021, when Ms. Sams informed Vice Principal Garrick and Principal Jewell that Crenshaw was frequently lying with Jane under a blanket at naptime, placing her on his lap, having her wear his clothing, and doting on her. And Ms. Sams provided the photographic evidence to the Vice Principal and taking the facts as they were pleaded and accepting them as true and drawing all inferences in the plaintiff's favor when Ms. Jewell called Ms. I'm sorry, where were you reading from? It is. It's page 21 of the complaint, and in the record of appeal it is at page 27. So the plaintiff contends that she did adequately plead that Ms. Sams informed Principal Jewell that Mr. Crenshaw was routinely lying with Jane Doe under a blanket at naptime. Based on the pleadings in the complaint, again accepting them as true, by March of 2021, based on the reports of Ms. Sams, who was a special education aide, and Marie Willis, who was a behavior interventionalist, based on their reports to Principal Jewell, at that time Jewell knew all of those facts. You look at the totality of those circumstances and the totality of the reports, which is Mr. Crenshaw is routinely sleeping with Jane Doe under a covering at naptime. He has her on his lap all the time. He's holding her hand. The picture that Ms. Sams took that was extremely damning is Mr. Crenshaw on the floor with a picture of Jane Doe straddling him. Principal Jewell, in response to those reports, not only did she look away, she made it easier for Mr. Crenshaw to harm Jane Doe. Knowing all of these facts from these reports, she separated the pre-kindergarten class. Jane Doe was five years old, and she was in a pre-K class at Lorna Primary School, where Ms. Jewell was a principal. Crenshaw was a substitute teacher. Ms. Jewell divided the pre-K class into smaller subgroups, and knowing about these reports of Crenshaw's behavior with Jane Doe, she put Crenshaw in charge as the only adult in a room with Jane Doe and four other students. So she knew that. She made it easier for Mr. Crenshaw to access Jane Doe and to harm her. Then in April, when she learns that when Mr. Crenshaw has his little subgroup of students, which includes Jane Doe, and a behavior interventionist, Ms. Wills, is trying to go and respond to screams coming from the classroom, Jewell finds out that he's locking his classroom door routinely. And what does she do then? She says, well, we can't be picky. She also removed Ms. Wills from her position in helping with the pre-K class. So, again, she also retaliated against Ms. Sams. Ms. Sams felt like she had done something wrong, and she left the school district. So the plaintiff did adequately plead the case. How do you respond to your counsel's argument that the locking of the door is actually a very common practice now in Texas schools? I don't know. I think that's beyond the four corners of the complaint. It's a fact dispute. I would say it's a factual dispute. So plaintiff has adequately pleaded the first prong of the Taylor test with respect to deliberate indifference. Ms. Jewell has gone beyond deliberate indifference. Deliberate indifference is often equated with turning a blind eye or looking away. Here, Ms. Jewell actually took proactive steps to make it easier for Crenshaw to harm Jane Doe. And also the third prong is causation. Before you move on to the next prong, what are the paragraphs of the complaint that you would focus on in terms of your argument that it's not just deliberate indifference. It's, as you said, active, actively enabling. What paragraphs would you focus on? In the complaint, I would focus on it's paragraph four, page two of the complaint. That's a summary. Page seven of the complaint, at paragraph 41, it discusses Principal Jewell treating Ms. Sams as though she did something wrong by reporting Crenshaw's inappropriate behavior. Page nine, paragraph 57, that discusses Principal Jewell splitting the pre-kindergarten class into smaller groups and placing Jane under Crenshaw's sole adult supervision. Is the allegation that that was intentional or just that it was random and that's just what happened in terms of the assignment of Jane? I would say it qualifies definitely as deliberate indifference and it almost smacks of malice and intent. But what's the allegation that that was deliberate as opposed to just a random assignment? You understand what I'm saying? Principal Jewell is in charge of that school. She supervises all the teachers, all the staff. And dividing a pre-k class into smaller subsections and drawing all inferences in favor of the plaintiff, you would assume or you would infer that that was the principal's responsibility. And she certainly knew in April when the complaint was made that Crenshaw was locking his classroom door and she knew Jane Doe was under Crenshaw's sole supervision. She certainly knew then. Further to your question, with respect to Principal Jewell reassigned Ms. Willis, and that is in paragraph... I'm sorry, 67 and 69. Jewell pulled Ms. Willis from the pre-kindergarten room assignment so that Ms. Willis could no longer monitor, supervise, or check on Crenshaw and also paragraph 69. With respect to causation, the defendants have questioned in their brief how Ms. Jewell could have caused the sexual abuse of Ms. Doe. Well, given her duties as a supervisor, which Texas law placed on Ms. Jewell the duty to supervise all the teachers and staff in her school, she certainly, as a practical matter, could have stepped in to intervene to remove Jane Doe from Crenshaw's classroom to increase her supervision of him. And also, there's another level of causation here which this court described in detail in the Raines County case, and this has to do with supervisory liability in general in Section 1983 cases. In determining who could be responsible when a state actor harms a child, like Mr. Crenshaw did in these circumstances, the court looks to see who falls within the circle of liability. A state actor's failure to exercise control that is given to her and Principal Jewell did have the mandate to supervise Mr. Crenshaw and all the other employees in her school. When you look at that, plus deliberate indifference, that is an abuse of her power and authority. She was granted that power and authority by the state of Texas, and she abused that power when she didn't take action to stop Crenshaw. This, as this court has said, is tantamount of conscious decision to allow a constitutional injury to occur or persist, and it makes her a legal participant. So as a legal matter, that's where the causation comes in. That made her a legal participant in that Section 1983 violation. If I can move on to the conscious shocking, executive action, the defendants have argued that the plaintiff did not plead the requisite level of culpability, but if you look at the Supreme Court's opinion in the Sacramento case, the measure of culpability, there is no yardstick, and the degree of culpability depends on the circumstances. So when a state actor has sufficient time to consider his or her response to a situation, the appropriate level of culpability is deliberate indifference. In other situations where the Supreme Court used a specific example of a prison riot or a high-speed car chase where split-second decisions have to be made, the level of culpability is different. In that case, it's malice or something more. And here, given what we know about, given what we've pleaded about Ms. Jewell, she knew a lot of different facts that showed that Crenshaw posed a serious danger to Ms. Doe. Sleeping with a child under a blanket at naptime, I don't know how you could construe that other than sexual or posing a very high risk of sexual behavior. There is no non-illicit rationale for an adult man who is not related to that child to be sleeping with her at naptime routinely under a blanket, under a covering, hiding what he was doing to her. So for the conscience-shocking claim, so putting deliberate indifference aside, can you point to any cases from our court or other circuits where a state actor's inaction, turning a blind eye, or inaction amounted to conduct that shocked the conscience? I can't as I stand here, Your Honor. But I would also argue that at issue here is the action that Principal Jewell took in knowing what she did about Crenshaw's behavior with Ms. Doe and then placing her under his direct supervision. Right. You made the point earlier that it was more than turning a blind eye. There were proactive steps taken to make it easier for the teacher to assault her. Yes, Your Honor. What moves... Similar question. So what transforms, if anything, inaction from being deliberate indifference to shocking the conscience? I know you say there was more than mere inaction here. Are you just kind of hanging your hat on that, that this was not simply inaction? This was not blind eye turning? There were affirmative steps taken that materially increased the danger? Yes. Also, knowing that the state of Texas empowers principals, places on principals the responsibility to supervise their staff and teachers to ensure the safety and well-being of students, that is a great responsibility. And when you abuse that responsibility or abuse that power, that is extraordinary. So Principal Jewell having those responsibilities, turning the blind eye, but also taking those proactive steps, that's conscious shocking. And the district court, we think the district court got it right on that. That is in the report and recommendation. Do Your Honors have any other questions? Anything else? Okay. Ms. Beck, thank you. Thank you. Ms. Mooney, you have five minutes on rebuttal. Thank you, Your Honor. Your Honor, I would just like to circle back quickly to, it's page 21 of the complaint, paragraph 135. That is under the count, the first count against the school district, Lorena ISD, summarizing what was alleged in January and February of 2021. Which we already discussed. So just because there's hyperbole in the counts of she knew of routine laying under blankets and she knew of routine sleeping with the children during nap time, that's not what's alleged. That's not what's alleged at all in the facts. And if you look specifically, because that is what that paragraph refers back to, that's not alleged whatsoever. So that was the first point. I'm sorry, I want to make sure I understand this. Your argument is paragraph 135 has lesser weight because of the section of the complaint it's in? No, Your Honor. I'm saying it refers back to the actual allegations that were made about January and February. That's specifically what that paragraph refers back to. And if you look at what is alleged in those paragraphs. I'm just trying to make sure I understand your argument. Are you denying that paragraph 135 is itself an allegation in the complaint? I am. I'm saying what dates was Mrs. Jewell on notice of routine laying under blankets? Any date. Well, paragraph 135 provides dates. Even what Mrs. Garrick was informed of was one incident. So routine isn't even included in that January or February allegation. Just to be clear, your argument is you're accepting that 135 is an allegation in the complaint. You're just saying we should interpret it correctly. I'm saying, yes, it mischaracterizes specifically what they refer to as the allegation, which was what happened in January and February, which is specifically set forth in the facts section. There's no allegation that either administrator had knowledge of routine laying under blankets. So that hyperbole has been added later, but where is that actual specific allegation? When did Mrs. Jewell know that? And that still hasn't been answered. And so just going to the— I guess what I'm not sure I understand about your argument is why can't 135 itself be the allegation? Because, Your Honor, they're referring to what they allege happened in January and February of 2021, and there's no such allegation about knowing about routinely laying under blankets. They say based on those allegations— But again, let me ask my question again. Why is paragraph 135 itself not the allegation? You may have a valid argument here. I'm just trying to understand it. I'm just saying— Why is 135— That is not what those allegations say, January 2021 and February 2021. You're saying that's not what the previous paragraph— They're purporting that to say that Mrs. Jewell, that they have alleged Mrs. Jewell had knowledge of routine laying under blankets, and that's not what they have alleged. So moving to the arbitrary and conscious shocking, just briefly I want to get to it, that the standard hasn't even nearly been met. Plaintiff quotes it best, the Doe versus Covington case. It has to sow beyond shock the decency of a civilized society. We haven't even reached a deliberate indifference standard here. And then finally what I do want to get to is the official capacity claims. The court can consider jurisdictional challenges at any time. The lower court inexplicably didn't address it, but the claims against the municipality are claims against the municipality, and they have to be dismissed against Mrs. Jewell in her official capacity. So that was a standing issue that was ignored by the lower court, which can be raised by this court. Of course it can. And the final thing I'd just like to leave the court with is if you could just picture me as a preschool teacher, and I'm holding a child's hand, and I'm walking them down the hallway, or I'm putting them on my knee to read a story, or I'm giving them my sweatshirt, none of that would be sexual behavior. None of that would lead anyone to plainly believe that that was sexual abuse. And this court doesn't have two standards. It's very easy to say Crenshaw's a man, and that, you know, there's no two standards. This court doesn't, and it shouldn't, apply two standards for what plainly pointing to sexual abuse is. These actions are things that go on in preschool classrooms, and they would never, ever, ever give a notion to a principal that they were sexual, as alleged here. And in hindsight, of course, we know that was the case. And it's horrible, but that was not what Mrs. Joe was aware of at the time. And unless the court has any further questions. Okay. Ms. Mooney, thank you very much. Thank you very much. The case is submitted.